IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JUSTIN FINCH, et al.,          )
                               )
     Plaintiffs,               )
                               )
v.                             ) CIVIL ACTION NO.:2:10-CV-0062-WCO
                               )
DONALD SHANE BROWN, et al.,    )
                               )
     Defendants.               )
_____)

## DEFENDANT BROWN'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT DONALD SHANE BROWN

NOW comes Defendant Brown, (sometimes "Respondent"), by and through counsel, and hereby responds to Plaintiffs' Motion For Partial Summary Judgment against him as follows:

## I.
## INTRODUCTION

Preliminarily, Defendant notes that plaintiffs originally filed a motion for summary judgment on February 23, 2011. (Document 103). That motion was accompanied by submission of a memorandum of law, a statement of material facts as to which plaintiffs contend there is no genuine issue to be tried, and other factual materials.

Later that day, plaintiffs filed an amended motion for summary judgment and then apparently supplemented the amended motion for summary judgment (Document 106) with additional factual materials that had been omitted earlier. (Document 108).

- 1 -

Through the several hundred pages of various filings, Defendant Brown understands that plaintiffs seek judgment as a matter of law in regard to the claim that is brought pursuant to 42 U.S.C. §1983 as well as on the state law negligence claim. While it is true that many of the facts that underlie plaintiffs' claims are undisputed, the linchpin of both plaintiffs' federal and state law claims is the proposition that Defendant Brown failed to conduct surveillance checks of the plaintiffs' decedent, Ricky Finch. However, that proposition involves disputes as to material facts which the court cannot resolve on motion for summary judgment. It follows that plaintiffs' motion is without merit and should be denied.

## STATEMENT OF FACTS

In order to present the facts in context, Respondent will outline the circumstances out of which plaintiffs' claims arise. On November 12, 2008, Ricky Finch was arrested by the City of Arcade Police and transported to the Jackson County Jail.[1] The shift on which Defendant Brown worked began at 6:00 p.m. on that day.[2] The other jail staff on the 6:00 p.m. to 6:00 a.m. shift included the supervisor, Defendant Stanley, Defendant Gailey, and Officers Krista Clark and Chad Herbert.[3] On November 12,

---

[1] Plaintiffs' Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried ("PSMF", p. 1).
[2] PSMF, par. 6
[3] PSMF, par. 6; Defendant Brown's Statement Of Facts As To Which He Contends Present A Genuine Issue For Trial Through The Submission Of The Declaration Of Donald Shane Brown ("Brown declaration" pp. 1-2).

Defendant Brown was a probationary employee with the Jackson County Sheriff's Office; Defendant Gailey and Officer Herbert had less tenure than he did.[4]

The formal booking took place at approximately 7:02 p.m. on November 12.[5] Defendant Clark handled the booking process. Part of that process involved using a medical questionnaire form, one question of which was the following: Does the inmate's behavior suggest the risk of suicide?[6] According to Krista Clark, Finch either responded verbally, or made some gesture on the basis of which she checked yes to the suicide question.[7] Information pertaining to the subject of Finch being a suicide risk was communicated to some of the other officers including Defendant Brown.[8]

Finch was designated as a 10-44, the code for persons identified as suicide risk on the white board that was located in the booking office which tracked where inmates were located.[9] However, Defendant Stanley, the responsible supervisor, decided that the jail protocol for persons identified as at risk for suicide would not be followed.[10] In particular, he decided that it was not necessary that Finch be dressed in a suicide smock.[11]

---

[4] Brown declaration, pp. 1-2.
[5] PSMF, par. 7.
[6] PSMF, par. 8-9.
[7] Clark deposition, p. 43.
[8] PSMF, par. 34.
[9] PSMF, par. 34.
[10] Stanley deposition, pp. 100-101
[11] Id.

The suicide smock was made of material which could not be used as the mechanism for suicide by hanging.[12]

Defendant Stanley also determined that Finch could have access to socks, a blanket, and other items that were not provided to inmates who were identified as suicide risks according to jail protocol.[13]

Defendant Stanley did direct that Finch be placed in a segregation cell in which a camera was located which could project images to monitors located in the booking area and in the tower area of the jail.[14]

Defendant Brown observed that Finch was not dressed in a suicide smock and that he had access to socks and other materials that were not provided to inmates who were identified as suicide risks per jail protocol.[15] Consequently, Defendant Brown asked Defendant Stanley whether normal protocol for suicide watch was to be followed. Stanley replied "we will keep an eye on him" which Brown understood to mean that observations would be made as often as reasonably possible consistent with Defendant Brown's handling of the other responsibilities of his position as a cell block officer.[16]

Defendant Stanley testified at one point in his deposition that he instructed Brown to carry out personal observations of

---

[12] Brown deposition, p. 51.
[13] Stanley deposition, p. 103; Brown declaration, p. 3.
[14] Brown deposition, p. 31; Stanley deposition, p. 62.
[15] Brown declaration, p. 3.
[16] Id.

Finch every fifteen minutes in a manner contemplated by the jail's standard operating procedures.[17] On the other hand, Defendant Brown has provided sworn testimony that Stanley never informed him that he was to personally observe Finch on an every fifteen minute basis. In fact, Defendant Brown's understanding was that the fifteen minute checks were <u>not</u> necessary or required under the circumstances.[18]

After being placed in the segregation cell, Finch was able to commit suicide by hanging, using socks that were tied around the bunk bed located in the segregation cell.[19]

## ARGUMENT AND AUTHORITY

### A.

### THE LAW OF SUMMARY JUDGMENT

Rule 56, Federal Rules Of Civil Procedure, outlines the process for requesting summary judgment and the criterion the court is to apply in resolving such applications. In particular, Rule 56(a) provides in pertinent part:

> "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

---

[17] Stanley deposition, p. 78.
[18] Brown declaration, pp. 3-4.
[19] PSMF, par. 91, 99, 100, 107.

In ruling on a summary judgment motion, the court must determine whether it can decide the case without having to resolve any factual disputes. The court may not weigh the evidence to resolve factual disputes, make credibility determinations, or choose which inferences to draw from the facts. See, e.g. Miller v. Target, 458 F.3d 1251,1255-56 (11th Cir. 2006). Rather, the court must view the record in the case and the submissions which are made in support of or in opposition to the application in the light most favorable to the non-movant. See, e.g. Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1225 (11th Cir. 2009), cert. denied, ___ U.S.___ 130 S. Ct. 2343, 176 L.Ed. 2d 561 (2010). Moreover, if the evidence supports inferences, the court must draw all reasonable inferences in the non-movants' favor. Stated somewhat differently, in ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts. Rather, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party, again, viewing the evidence and the inferences to be drawn in the light most favorable to the non-movant. See Morrison v. Amway Corp., 323 F. 3d 920, 924 (11th Cir. 2003).

In addition to determining whether a matter is "disputed", the court must determine whether a fact is "material". In the context of summary judgment decisions, a fact is "material" if

it might affect the outcome of the suit under the substantive law applicable to the case. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Attention may now be directed to the substantive law applicable to plaintiffs' claims.

### B.

## DISCUSSION OF PLAINTIFFS' §1983 CLAIM

Preliminarily, it does not appear that Defendant Brown and plaintiffs are in substantial dispute with respect to the law governing plaintiffs' §1983 claim. While the Eighth Amendment prohibitions against cruel and unusual do not apply because of plaintiffs' status as a pretrial detainee, the relevant legal standard is the same under the Fourteenth Amendment. See, e.g. Cook v. Sheriff of Monroe County, FLA., 402 F.3d. 1092, 1115 (11th Cir. 2005). To prevail under §1983 for violation of substantive rights under either the Eighth or the Fourteenth Amendment, the plaintiff must demonstrate that the defendant jail official displayed "deliberate indifference" to the prisoners taking of his own life. Tittle v. Jefferson County, 10 F.3d. 1535, 1539 (11th Cir. 1994). The "deliberate indifference" standard in this context requires a strong likelihood rather

than a mere possibility that self-infliction of harm will occur. Cagle v. Sutherland, 334 F.3d. 980, 986 (citations omitted).

Plaintiffs, of course, have the burden to prove by a preponderance of the evidence that Respondent was guilty of "deliberate indifference". Moreover, because plaintiffs' claims against Brown are asserted against him in his individual capacity, he is entitled to invoke the protection of qualified immunity. If Defendant Brown was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply. Lee v. Ferraro, 284 F.3d. 1188, 1194 (11th Cir. 2002).

In arguing "deliberate indifference" in their summary judgment motion, plaintiffs place critical reliance on the assertion that Defendant Brown failed to check on Finch every fifteen minutes as specified by the jail's suicide watch protocol and based upon Stanley's alleged direction to implement the suicide protocol in that respect.[20] However, plaintiffs totally ignore the factual statements of Defendant Brown in which he describes his communications with his supervisor with regard to whether the jail protocol was to be followed in regard to the fifteen minute checks.[21] It should be emphasized that this communication took place in the wake of Defendant Stanley's decision that jail protocol was not to be followed

---

[20] PSMF,par. 50; Plaintiff's Brief In Support Of Motion For Summary Judgment, p. 12.
[21] See declaration of Donald Shane Brown, pp. 3-4.

notwithstanding that Finch had been designated on the booking office white board as a 10-44 (suicide risk). Considering the undisputed facts that Stanley had determined that Finch would not be placed in a suicide smock and that other items including the socks with which Finch hung himself would not be taken from him, Defendant Brown sought clarification about whether the other parts of the protocol for a suicide watch would be followed. Stanley did not tell Brown to personally observe Finch on an every fifteen minute basis. Rather, Stanley replied that "we will keep an eye on him" which Brown reasonably understood to mean that the fifteen minute watches were not necessary nor required and that he would be observed as often as reasonably possible consistent with the other tasks for which Brown was responsible.[22]

Plaintiffs have asserted as an undisputed material fact that "Stanley gave Brown a direct order to carry out the fifteen-minute watches."[23] Actually, when initially questioned about the matter, Stanley testified that other than telling Brown that Finch was on suicide watch, "I don't remember telling him anything else."[24] Granted, Stanley later claimed to have instructed Brown to carry out the fifteen minute watches.[25] Regardless of the internal conflict in Stanley's deposition

---

[22] Brown deposition, pp. 3-4.
[23] PTMF, par. 50.
[24] Stanley deposition, p. 53.
[25] Stanley deposition, p. 78.

testimony, Defendant Brown has provided in a sworn declaration that Stanley never informed him that it was his duty to personally observe Finch on an every fifteen minute basis.[26]

Since plaintiffs have specifically acknowledged _in judicio_ the alleged direction from Stanley to Defendant Brown to be "material", and since there is clearly a fact dispute on whether Stanley instructed Brown to conduct the fifteen minute watches, the court is not authorized to make credibility determinations to resolve the matter. Rather, this is a dispute that must be resolved by the finder of fact. It is evident that standing alone, this disputed issue of material fact requires the court to deny plaintiffs' motion for summary judgment.

To the extent that plaintiff asserts that the requirements of the jail protocol provides some basis for ignoring the disputed issue of fact which plaintiffs have admitted to be material relating to the question of Stanley instructions to Brown, it is again noteworthy to consider Brown's declaration that it was the supervisor's determination to make about procedures that were to be followed with respect to Finch. Notwithstanding the designation of Finch as a 10-44, Stanley decided that Finch would not be placed in a suicide smock and that he would be allowed to retain items including socks. Brown was aware that Stanley had made such decisions and requested clarification about procedures that would be followed with

---

[26] Brown declaration, pp. 3-4.

regard to Finch. When Brown inquired of Stanley and was told not that the fifteen minute watches would be followed but that "we will keep an eye on him", Brown understood that decision to override the procedures that would ordinarily be followed with persons identified as at risk for suicide.[27] Not only is that what Brown specifically declared under oath, it is circumstantially corroborated by Stanley's decision that jail protocol would not be followed.

Based upon the facts which are disputed and which the parties agree are "material" and viewing the evidence in the light most favorable Brown and drawing reasonable inferences in his favor, a reasonable jury could most assuredly conclude that plaintiffs have failed through their submissions to satisfy their burden of demonstrating that the essential elements of a "deliberate indifference §1983 jail suicide claim have been established. Defendant Brown is entitled to have these factual disputes resolved by a jury, and the court should deny plaintiffs' motion for summary judgment.

**C.**

**DISCUSSION OF PLAINTIFFS' STATE LAW CLAIM**

Under Article I, Section II, Paragraph IX(d), of the Constitution of the State of Georgia, officials like Defendant

---

[27] Brown declaration, pp. 3-4.

Brown are not liable for the performance or non-performance of their official functions unless they acted with actual malice or with actual intent to cause injury or unless they negligently performed ministerial functions. See, e.g. Williams v. Solomon, 242 Ga. App. 807, 531 S.E. 2d 734, (2000); Coffey v. Brooks County, 231 Ga. App. 886, 500 S.E. 2d 341, (1998); Gilbert v. Richardson, 264 Ga. 744, 452 S.E. 2d 476, (1994).

With the passage of the 1991 constitutional amendment, the doctrine of official immunity was elevated to constitutional status. The term "official functions" in the constitutional amendment has been authoritatively interpreted to mean "...any act performed within the officer's or employee's scope of authority including both ministerial and discretionary acts". Gilbert v. Richardson, 264 Ga. at 752.

> "Under this definition, the 1991 amendment provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law. This interpretation comports with the purpose of providing immunity from the personal liability to government employees who work in positions where they make policy or exercise discretion." Id.

Case law following the decision in Gilbert v. Richardson has defined discretionary acts as those calling for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasonable conclusions, and acting on them in ways not specifically directed. Phillips v. Walls, 242 Ga. App. 309, 311, 529 S.E. 2d 626 (2000); Todd v. Kelly, 244 Ga. App. 404, 406, 535 S.E. 2d 540 (2000); Teston v. Collins, 217 Ga. App. 829, 459 S.E. 2d 452 (1995). Where the acts or omissions alleged as a basis of liability involve the exercise of discretion, even gross negligence or gross abuse of discretion will not abrogate the protection of official immunity, See, e.g. Lowe v. Jones County, 231 Ga. App. 372, 499 S.E. 2d 348 (1998); Bontwell v. Dept. of Corrections, 226 Ga. App. 524, 486 S.E. 2d 917 (1997).

In this case, plaintiffs allege that Defendant Brown was guilty of violating his ministerial duties as a matter of law on the same basis on which they claim an entitlement to summary judgment on the §1983 "deliberate indifference claim" i.e. the alleged instructions to watch Finch every fifteen minutes and the failure to conduct fifteen minute watches because of the jail protocol.

For precisely the same reasons discussed supra at pp. 8-11, there is a material issue of disputed fact with regard to plaintiffs' claimed entitlement to judgment on their state law

claims. Contrary to the plaintiffs' contentions, although material, it is certainly not undisputed that Stanley told Brown to check on Finch every fifteen minutes. Moreover, based on Stanley's deviation from the jail protocol with regard to how Finch would be dressed while confined in the segregation cell and because Finch was allowed access to socks and other personal items, Brown could reasonably believe that fifteen minute watches were not necessary nor required given Stanley's response to his inquiry that "we will keep an eye on him". Given the message that was conveyed by his supervisor, Brown could reasonably believe that personally observing Finch as often as he reasonably could consistent with his other duties was what was required. Such decision-making involves judgment, not the execution of a ministerial duty, and consequently, even if in the bright gleam of hindsight such is considered to be negligent or even grossly negligent, the protection of official immunity is not lost.

For all the foregoing reasons, the court should deny plaintiff's motion for summary judgment on the state law claims of plaintiffs.

## CONCLUSION

For all the reasons stated, and for other good and sufficient cause, defendant is entitled to a trial because there are genuine issues of disputed facts which plaintiffs have

repeatedly acknowledged are material. Plaintiffs' motion should therefore be denied.

Respectfully submitted,

BEGNAUD & MARSHALL, LLP

s/Andrew H. Marshall
Andrew H. Marshall
Georgia Bar No.: 471450
Attorney for Defendant
Donald Shane Brown

1091-B Founder's Boulevard
Post Office Box 8085
Athens, Georgia 30603-8085
(706) 316-1150
(706) 316-1153 fax
dmarshall@athens1867.com

## LOCAL RULE 7.1(D) CERTIFICATE

I further hereby certify that this document has been prepared using Courier New (12 point) font.

This 23rd day of March, 2011.

s/Andrew H. Marshall
Andrew H. Marshall

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the other parties in the foregoing matter by depositing in the United States mail a copy of **Defendant Brown's Response To Plaintiffs' Motion For Partial Summary Judgment Against Defendant Donald Shane Brown** in an envelope with adequate postage addressed to:

> Albert Wan, Esq.
> Albert Wan, Attorney at Law
> Suite 200
> 1201 Peachtree Street
> 400 Colony Square
> Atlanta, Georgia 30361
>
> George Brian Spears, Esq.
> Law Office of Brian Spears
> 1126 Ponce de Leon Avenue
> Atlanta, Georgia 30306
>
> Gary M. Shapiro, Esq.
> Law Office of Gary M. Shapiro
> Suite 1500-20
> 400 Galleria Parkway
> Atlanta, Georgia 30339
>
> G. Kevin Morris, Esq.
> Williams, Morris & Waymire
> 4330 South Lee Street, NE
> Building 400, Suite A
> Buford, Georgia  30518
>
> Timothy J. Buckley, III, Esq.
> Michaela C. Kendall, Esq.
> Buckley Brown
> Attorneys at Law
> 2970 Clairmont Road, NE
> Suite 1010
> Atlanta, Georgia 30329

This 23rd day of March, 2011.

> s/Andrew H. Marshall
> Andrew H. Marshall