IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| JUSTIN FINCH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.:2:10-CV-0062-WCO |
| | ) |
| DONALD SHANE BROWN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANT BROWN'S STATEMENT OF ADDITIONAL FACTS WHICH HE CONTENDS PRESENT A GENUINE ISSUE FOR TRIAL THROUGH THE SUBMISSION OF THE DECLARATION OF DONALD SHANE BROWN

NOW comes Defendant Brown, by and through counsel, and hereby submits his declaration in opposition to Plaintiffs' Motion For Summary Judgment. The facts set forth in this declaration present genuine issues of material fact for trial and refute Plaintiffs' Statement Of Alleged Undisputed Fact as follows:

1.

It is disputed that Defendant Stanley gave Defendant Brown a direct order to carry out fifteen minute watches on Finch after he was placed in a segregation cell. See declaration of Donald Shane Brown, pp. 3-4, par. 9-10.

2.

Defendant Brown also disputes the statement or implication

that Defendant Brown had a duty to conduct fifteen minute watches on Finch based upon the jail protocol. Defendant Brown understood from Defendant Stanley's statement that "We will keep an eye on him" and based upon Defendant Stanley's decision not to follow jail protocol with respect to a suicide smock and with reference to allowing Finch to have socks and other personal items in the segregation cell that he was to observe Finch as much as reasonably possible given his other responsibilities and that Stanley's decision with respect to the matter overrode jail protocol under the circumstances. See declaration of Donald Shane Brown, pp. 3-4, par. 9-10.

WHEREFORE, Defendant Brown requests that plaintiffs' motion for summary judgment against him be denied.

    Respectfully submitted,

    BEGNAUD & MARSHALL, LLP


    s/Andrew H. Marshall
    Andrew H. Marshall
    Georgia Bar No.: 471450
    Attorney for Defendant Brown

1091-B Founder's Boulevard
Post Office Box 8085
Athens, Georgia 30603-8085
(706) 316-1150
(706) 316-1153 fax
dmarshall@athens1867.com

**STATE OF GEORGIA**

**JACKSON COUNTY**

## DECLARATION OF DONALD SHANE BROWN

Pursuant to 28 U.S.C. §1746, I hereby make the following declaration.

**1.**

I am over the age of majority, am fully competent to provide sworn testimony in judicial proceedings, and have personal knowledge of facts and circumstances described in this declaration. I understand that this declaration will be submitted to the court in the case of <u>Finch, et al. v Brown, et al.</u>, United States District Court for the Northern District Of Georgia, Gainesville Division, Civil Action File Number: 2:10-CV-0062-WCO, in connection with one or more motions which are being filed.

**2.**

On November 12, 2008, I was employed by the Jackson County Sheriff's Office and assigned to the Jackson County Detention Center. At the time, I had been employed for a little over five months and was still considered to be a probationary employee.

**3.**

The shift on which I served on November 12, 2008, began at 6:00 p.m. Phillip Stanley was the supervisor on the shift which began at 6:00 p.m. on November 12, 2008. The other persons who

worked on that shift were Krista Clark, Raymond Gailey, and Chad Herbert. Gailey and Herbert had less time in service at the Jackson County Detention Center than I did.

4.

During the first part of the shift when began at 6:00 p.m., my responsibility was to work the various cell blocks of the detention center which included doing head counts, distribution of medication, doing laundry, helping out in booking, and other duties. I was also supposed to be training Chad Herbert who was the most junior person working the shift.

5.

I was aware as a general proposition that the Jackson County Jail standard operating procedures required that persons determined to be at risk of suicide be observed on an every fifteen minute basis. I also acknowledge that I was informed that Ricky Finch had been identified as a suicide risk through the completion of the questionnaire that is a routine part of the booking process.

6.

On the other hand, it was also my understanding that the general policy and protocol for persons identified as at risk for suicide was to take away all of the inmate's civilian clothing and personal belongings and to place him in a suicide smock. The smock was made of a material that was very stiff so

that it could not be bent or folded or tied.

### 7.

I had observed that Mr. Finch was placed in a segregation cell and that he was not dressed in a suicide smock. I could also observe that he had access to socks, a blanket, and other items that are not provided to inmates who are identified as suicide risks. In light of that, it was evident that my supervisor, Mr. Stanley, had made a determination that the procedure for handling persons identified as suicide risks was not going to be followed.

### 8.

In fact, in observing that Mr. Finch was not dressed in a suicide smock and that the other items noted above were accessible to him within the segregation cell which I could observe by means of a video camera which projected images to a monitor in the booking area, I asked Mr. Stanley about the normal protocol for a suicide watch and whether that was to be followed. Mr. Stanley's reply was that "we will keep an eye on him" which I took to mean that he would be observed as often as reasonably possible consistent with my handling the other responsibilities of my position.

### 9.

On November 12, 2008, Mr. Stanley never informed me that it was my duty to personally observe Mr. Finch on an every fifteen

minute basis. I understood his statements to me that personally observing him every fifteen minutes was <u>not</u> necessary or required. I believed and understood that his specific actions in deciding that Mr. Finch would not be placed in a suicide smock, his decision to allow Mr. Finch access to items which were not allowed to persons who were identified as at risk for suicide, and his comments to me that "we will keep an eye on him" overrode the procedures that would ordinarily be followed with persons identified as a "suicide risk".

### 10.

I did not question Mr. Stanley's decision about the procedures that were to be followed with respect to Mr. Finch. He was my immediate supervisor and the final authority within the jail at the time Mr. Finch went through the booking process and was placed into the segregation cell. I understood and believed that it was a supervisor's decision as to whether the procedures relating a suicide watch meaning the personal observation of the inmate every fifteen minutes was to be followed. I believed that Mr. Stanley had the authority to make the final call about how to handle Mr. Finch, and I did not question his decision.

**11.**

I declare under penalty of perjury that the within and foregoing statement is true and correct.

This 20th day of March, 2011.

Donald Shane Brown

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the other parties in the foregoing matter by depositing in the United States mail a copy of **Defendant Brown's Statement Of Facts Which He Contends Present A Genuine Issue For Trial Through The Submission Of The Declaration Of Donald Shane Brown** n an envelope with adequate postage addressed to:

Albert Wan, Esq.
Albert Wan, Attorney at Law
Suite 200
1201 Peachtree Street
400 Colony Square
Atlanta, Georgia 30361

George Brian Spears, Esq.
Law Office of Brian Spears
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306

Gary M. Shapiro, Esq.
Law Office of Gary M. Shapiro
Suite 1500-20
400 Galleria Parkway
Atlanta, Georgia 30339

G. Kevin Morris, Esq.
Williams, Morris & Waymire
4330 South Lee Street, NE
Building 400, Suite A
Buford, Georgia  30518

Timothy J. Buckley, III, Esq.
Michaela C. Kendall, Esq.
Buckley Brown
Attorneys at Law
2970 Clairmont Road, NE
Suite 1010
Atlanta, Georgia 30329

This 23rd day of March, 2011.

s/Andrew H. Marshall
Andrew H. Marshall

3